JAMES E. MINSHALL, APPELLEE AND CROSS-APPELLANT,
V. PLAINS MANUFACTURING COMPANY AND THE
MARYLAND CASUALTY COMPANY, APPELLANTS AND
CROSS-APPELLEES.

341 N.W.2d 906

Filed December 9, 1983. No. 83-146.

Harry R. Meister of Brenner and Meister Law Office, for appellants.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal by defendant employer and its insurance carrier (hereinafter collectively called "Plains") from the decision of a three-judge panel of the Workmen's Compensation Court, which had affirmed the judgment of a single-judge court. The three-judge panel held that as of October 26, 1982, plaintiff Minshall was still totally disabled from a compensable accident of October 13, 1977; that Minshall should recover from Plains total disability payments of $140 per week from October 21, 1977, to October 26, 1982, and so long in the future as plaintiff shall remain totally disabled; that Plains should pay certain medical expenses incurred and should continue to provide future medical and hospital care; that no attorney fees or additions for waiting time should be assessed against Plains because there was a reasonable controversy between the parties; that Plains should pay attorney fees and deposition costs incurred in connection with the appeal to the three-judge panel; and that appellee was entitled to vocational rehabilitation services as provided in Neb. Rev. Stat. § 48-162.01 (Reissue 1978).

Plains appeals from the compensation court's order on rehearing, and assigns as error the findings of the compensation court that Minshall was still totally disabled at the time of the rehearing; that Minshall was temporarily totally disabled while working part-time after taking a rehabilitation

course; in failing to find that Minshall had a 20-percent partial disability at the most; and in awarding attorney fees and deposition costs to Minshall on rehearing.

Minshall cross-appeals from the denial of his claims for waiting time benefits, and alleges that there was no reasonable controversy between the parties and that Plains should be penalized according to statute.

For reasons hereinafter set out we affirm the judgment of the compensation court insofar as that court determined that Minshall was totally disabled and was entitled to the benefits awarded him based on that disability, but we reverse the finding of the compensation court that there was a reasonable controversy between the parties.

There is no dispute between the parties that Minshall's injuries arose out of and in the course of his employment with Plains. The accident occurred on October 13, 1977, when Minshall was knocked unconscious and injured while unloading the truck he was driving for Plains. On October 21, 1977, Plains began paying $140 per week to Minshall as temporary total disability payments. These payments were made regularly until June 30, 1980, when Plains reduced the payments to $29.23 per week. This rate corresponds to a 20-percent permanent partial disability rating given to Minshall in a letter dated June 28, 1978, from Dr. Ropp to Maryland Casualty Company. This action was instituted by Minshall on January 14, 1982, seeking restoration and continuation of the total disability benefits.

The record shows that Minshall was 48 years old at the time of the accident in 1977. He had been primarily a truckdriver for 30 years but had worked at different times at various other jobs, such as a security guard and a cook. Since the accident, Minshall has never returned to the job of truckdriver.

After the accident Minshall received rehabilitative services by taking a correspondence course in en-

gine repair. He completed this 18-month course in November 1980 and began working 6 hours per day in his brother's shop. His hours were subsequently reduced due to pain in his back and neck. Minshall apparently worked less than 1 year in his brother's shop, and then worked on his own in his own residence garage until May of 1982. During the last year, he was able to work about 2 hours in the morning and, after a break, about another hour in the afternoon.

In October 1982 Minshall testified that he had dizziness, blurred vision, lapses of memory, pains in his back and neck, numbness in his right side, and lack of coordination in his right arm. He testified that after the accident there were occasions when he stumbled and fell to the ground. Minshall further testified that after he left his brother's shop he has limited himself to part-time tuneup jobs, oil changes, and lawnmower engine repair. This work is done in the garage at his home. He also testified that he had applied for other jobs but had not been successful in obtaining employment and that he would like to work because he had been a worker all his life.

Minshall's wife corroborated the plaintiff's testimony as to his hours of work, the type of work he did, the pain he suffered, and his lapses of memory.

During the 5 years after the accident, Minshall saw Dr. Cutright, his family physician, who referred him to three different specialists: Dr. Ropp, an orthopedic surgeon; Dr. Beehler, a neurosurgeon; and Dr. Edgar, also a neurosurgeon. The record contains depositions from all the doctors except Dr. Beehler.

All of the testifying doctors were in agreement that the plaintiff is not able and should not return to work as a truckdriver. They also felt that the engine repair work was too much of a physical strain on the plaintiff. Drs. Cutright and Edgar testified the plaintiff's occupation should be limited to a more

sedentary nature, or a job that does not require awkward working positions. Dr. Ropp was the only doctor to venture a percentage of disability, which he rated as a "20% whole body permanent physical impairment and loss of physical function."

In appeals from the Nebraska Workmen's Compensation Court, this court is to apply the limited standards of review used in civil jury cases. As stated in *Sortino v. Miller*, 214 Neb. 592, 594-95, 335 N.W.2d 284, 286 (1983), " 'Findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. . . . In determining the sufficiency of evidence necessary to sustain an award of the Nebraska Workmen's Compensation Court after rehearing, such evidence must be considered most favorably to the successful party, every controverted fact must be resolved in his or her favor, and he or she must receive the benefit of every inference reasonably deducible from it.' "

Disability under Neb. Rev. Stat. § 48-121(1) and (2) (Reissue 1978) of the Nebraska workmen's compensation law is defined in the cases in terms of employability and earning capacity rather than in terms of loss of bodily function. As stated in *Craig v. American Community Stores Corp.*, 205 Neb. 286, 289, 287 N.W.2d 426, 428 (1980), " ' "In defining total disability, losses in bodily function are not important in themselves but are only important insofar as they relate to earning capacity and the loss thereof." . . .' " See, also, *Nordahl v. Erickson*, 174 Neb. 204, 116 N.W.2d 275 (1962); *Miller v. Peterson*, 165 Neb. 344, 85 N.W.2d 700 (1957).

Before the accident, Minshall was earning an average weekly income of $212.22 as a truckdriver. His books showed cash income of $102.94 in November and December of 1980. His gross income for all of 1981 in engine repair was $2,217, resulting in a net loss of $450. At the time of rehearing the plaintiff

was limited to tuneup jobs and oil changes in his garage at home. He had actively sought employment in other areas, such as security guard and police work, but was unable to secure a job. All the medical witnesses agree that Minshall can never return to his employment of truckdriver.

A workman who is unable to perform or to obtain any substantial amount of labor, either in his particular line of work or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the Workmen's Compensation Act. *Runyan v. State,* 179 Neb. 371, 138 N.W.2d 484 (1965).

The finding of total disability by the three-judge panel is not in error. The record justifies the conclusion that Minshall attempted to work after his rehabilitation and was physically unable to continue. A disabled person must be able to attempt employment after his injury without fear that that attempt, if unsuccessful, will result in the loss of the benefits under the compensation law.

With regard to the awarding of attorney fees and deposition costs to Minshall on the rehearing, the right to award such amounts is governed by Neb. Rev. Stat. § 48-125 (Reissue 1978), which stated in part, at the time of the rehearing, "In the event the employer files an application for a rehearing before the compensation court en banc from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court sitting en banc may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court." The right to award such fees was approved in *Harrington v. State,* 198 Neb. 4, 251 N.W.2d 653 (1977).

The rehearing court did not err in awarding an attorney fee. The statute is clear, and the record in

this case shows that the employer failed to obtain any reduction in the award. It is further ordered that appellants pay to appellee the sum of $750 as attorney fees for proceedings in this court.

Minshall has cross-appealed, alleging that the Workmen's Compensation Court erred in finding that a reasonable controversy existed justifying Plains' failure to make timely payment. Based on this finding, the compensation court held "That no attorney's fees or additions for waiting time may be assessed against the defendant, there being a reasonable controversy between the parties."

Minshall argues that under § 48-125, as that statute was in effect during the proceedings in the compensation court, he should have been awarded a 50-percent penalty on payments determined to be due, and an attorney fee. The law in this area is settled. In *Savage v. Hensel Phelps Constr. Co.*, 208 Neb. 676, 680, 305 N.W.2d 375, 378 (1981), we stated, "We have previously held that where a reasonable controversy exists between the parties as to the payment of compensation, an injured employee is not entitled to the statutory penalties for waiting time."

We have further held that whether there was a reasonable controversy between the parties is always a fact question and that this court is bound by findings of fact of the compensation court after rehearing, to the extent that such findings have support in the evidence. *Savage v. Hensel Phelps Constr. Co., supra.*

This court has carefully searched the record seeking support for the compensation court's finding "that there is a reasonable controversy so that the plaintiff is not entitled to attorney's fees for defendant's failure to make timely payments." The compensation court made no specific finding in this regard.

Plains states in its brief that "[t]he insurance carrier was advised that Mr. Minshall had returned to work; that is when the carrier began to pay the

twenty percent permanent partial disability payments." Reply Brief for Appellants at 3. We are not given any citation to the record to support that factual statement, and we can find no such support. The record shows that Minshall completed his rehabilitation training correspondence course in about 18 months, finishing in November of 1980. On November 7, 1980, Minshall opened his shop in his brother's filling station. In the succeeding 2 months Minshall did 14 jobs, resulting in net income to him of $102.94. His work record in the succeeding year is set out above.

Our examination of the record shows no factual matter brought to Plains' attention that changed Minshall's disability situation as of July 1, 1980, except Dr. Ropp's letter of June 28, 1978, as updated by his letter of June 25, 1980. That letter referred to the 20-percent permanent partial disability rating. As set out above, this court has often held that in defining total disability, losses in bodily function are not important in themselves, but are only important insofar as they relate to employability and earning capacity, and the loss thereof. *Craig v. American Community Stores Corp.*, 205 Neb. 286, 287 N.W.2d 426 (1980); *Nordahl v. Erickson,* 174 Neb. 204, 116 N.W.2d 275 (1962); *Miller v. Peterson,* 165 Neb. 344, 85 N.W.2d 700 (1957).

In this case Plains had been paying total disability payments to Minshall since October 21, 1977. On July 1, 1980, Plains, acting unilaterally and with no consultation with Minshall, with no evidence except what had been in its hands since June of 1978, reduced Minshall's payments to a rate equivalent to a 20-percent permanent partial disability. From the record before us we can only determine that on the date of the reduction Minshall had not even completed his rehabilitation course. He certainly was not fully employed. There are no facts in the record to support a finding that there was a "reasonable controversy" between the parties. All the facts re-

cited above to affirm the compensation court's findings of total disability serve to show that there was no "reasonable controversy" between the parties as of July 1, 1980, or thereafter, as to Minshall's total disability. The 20-percent disability rating relied on by Plains to reduce its payments did not in and of itself warrant the conclusion that Minshall was not totally disabled within the meaning of the workmen's compensation statutes.

Accordingly, the judgment of the Workmen's Compensation Court as to Minshall's total disability is affirmed in its entirety. The judgment of the compensation court that Minshall is not entitled to statutory penalties, including attorney fees for waiting time after July 1, 1980, is reversed, and the cause is remanded with directions to enter a judgment in favor of Minshall for the appropriate statutory penalties and attorney fees.

> AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.