DORIS L. CRIPPEN, APPELLEE, V. MAX I. WALKER AND ITT HARTFORD, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLEES, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLANT.

572 N.W. 2d 97

Filed December 16, 1997.    No. A-97-401.

Don Stenberg, Attorney General, and Martin W. Swanson for appellant.

David L. Welch and Lisa M. Meyer, of Gaines, Mullen, Pansing & Hogan, for appellees Max I. Walker and ITT Hartford.

Dirk V. Block, P.C., of Marks, Clare & Richards, for appellee Crippen.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

The State of Nebraska, Second Injury Fund, appeals an award of the Workers' Compensation Court, finding that Doris L. Crippen's workplace injuries had combined with her preexisting disability to render her permanently and totally disabled and finding that the Second Injury Fund was liable under Neb. Rev. Stat. § 48-128 (Reissue 1993) for its apportioned share of Crippen's disability. The Second Injury Fund contends that it should have been dismissed as a party under *Eichorn v. Eichorn Trucking*, 3 Neb. App. 795, 532 N.W.2d 345 (1995), because Crippen's injuries were separate and distinct and not capable of being combined. We disagree with the Second Injury Fund's interpretation of *Eichorn* and conclude that although Crippen's injuries were separate and distinct, the trial judge correctly combined them and held the Second Injury Fund liable for its apportioned share. Thus, we affirm.

## PROCEDURAL BACKGROUND

The facts are undisputed. On or about December 10, 1992, Crippen suffered an accident arising out of and during the course of her employment with Max I. Walker (Walker), a dry cleaner, where she worked as a towel folder. Crippen's injuries consisted of bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome. Crippen subsequently brought an action against Walker for workers' compensation benefits. In an order filed September 14, 1994, the trial judge awarded her temporary total benefits and ordered that if the parties could not agree on the extent of her impairment at the time that her total disability ceased, an additional hearing could be held.

On December 6, 1995, Crippen filed a "further petition," seeking permanent total disability benefits. In its answer, Walker affirmatively alleged that Crippen had reached maximum medical improvement and was entitled to permanent partial disability benefits based on a 10-percent rating for each upper extremity. At some point, ITT Hartford, Walker's insurer, was made a party to the action. Crippen then impleaded the Second Injury Fund based on her complete bilateral hearing

loss, a condition which predated her employment with Walker and which Walker knew of when it hired Crippen. Thereafter, Crippen filed a "third party petition," again praying for permanent total disability benefits.

A hearing was had on the matter on August 26, 1996. The trial judge found that from and after November 21, 1995, Crippen had been permanently and totally disabled on the basis of the combined disabilities of loss of hearing and her December 10, 1992, injuries to her arms. The trial judge found that because the requirements of § 48-128 had been satisfied, Walker was liable only for the 10-percent permanent partial disability to each arm resulting from the December 10, 1992, accident and that the Second Injury Fund was liable for the remainder of Crippen's disability. The trial judge ordered the Second Injury Fund to pay $140 per week in permanent and total disability benefits. The Second Injury Fund appealed, and the review panel affirmed. The Second Injury Fund now appeals to this court.

## ASSIGNMENTS OF ERROR

The Second Injury Fund contends that the court erred in concluding that all the requirements of § 48-128 had been met and in not following *Eichorn*, which it argues is precedential and controlling.

## STANDARD OF REVIEW

With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Acosta v. Seedorf Masonry, Inc.*, 253 Neb. 196, 569 N.W.2d 248 (1997).

## ANALYSIS

The Second Injury Fund's liability is set out in § 48-128, which provides in relevant part:

(1) If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence

of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. For the additional disability, the employee shall be compensated out of a special trust fund created for that purpose which shall be known as the Second Injury Fund which is hereby created. . . .

(2) In order to qualify under this section, the employer must establish by written records that the employer had knowledge of the preexisting permanent partial disability at the time that the employee was hired or at the time the employee was retained in employment after the employer acquired such knowledge.

(3) . . . No condition shall be considered a preexisting permanent partial disability under this section unless it would support a rating of twenty-five percent loss of earning power or more or support a rating which would result in compensation payable for a period of ninety weeks or more for disability for permanent injury as computed under subdivision (3) of section 48-121.

■ Section 48-128 requires, as a condition to entitlement to compensation from the Second Injury Fund, that the employee be "entitled to receive compensation on the basis of the combined disabilities." See *Eichorn v. Eichorn Trucking*, 3 Neb. App. 795, 532 N.W.2d 345 (1995). The "combined disabilities" are those from the preexisting condition and the subsequent compensable injury. *Id.*

Absent the provisions of § 48-128, an employer is liable for all compensation benefits to which an employee is entitled. Therefore, the statute is for the benefit of the employer, as the employee has no interest in *who* pays the

money, so long as he or she receives it. [Citation omitted.] Because the statute benefits the employer, it is the employer's burden to prove apportionment between the portion of the injury for which the fund is liable and the portion for which the employer is liable, and generally the fund's involvement comes by virtue of the employer joining the fund in a manner akin to making it a third-party defendant.

*Id.* at 805, 532 N.W.2d at 352.

■ Section 48-128 allows the employer of an injured employee to shift some of the liability for benefits for an injured employee to the Second Injury Fund. However, before the burden can shift, the employee must first be found to be entitled to receive compensation benefits as a result of the combined disabilities. If the employee is found not to be entitled to benefits for the combined disabilities and the employer is thus liable only for the disability resulting from the subsequent last injury, there is nothing to shift to the fund and § 48-128 has no application. *Eichorn, supra.*

The Second Injury Fund argues that *Eichorn* stands for the proposition that separate and distinct injuries cannot combine under § 48-128, and, as a result, it contends that it cannot be held liable for any of Crippen's disability. Succinctly put, we disagree.

■ In *Eichorn*, the employee did not challenge the trial court's finding that she was not entitled to receive compensation on the basis of combined disability. Instead, on appeal, the employee attempted to hold the Second Injury Fund directly liable for the benefits for which her employer was not liable. This court concluded that because the employee conceded or waived any right she might have had to compensation on the basis of a combined disability, there was no possibility that the Second Injury Fund could bear a portion of the burden of liability for a combined disability. Therefore, there was no liability for the employer to shift to the Second Injury Fund, and § 48-128 was inapplicable.

■ *Eichorn* does not stand for the proposition that separate and distinct injuries cannot be combined, but, rather, that there can be no award from the Second Injury Fund if there is no

determination that the employee is entitled to receive compensation on the basis of combined disabilities. In many cases, such as those cited below, the interpretation relied upon by the Second Injury Fund would render the statutory provision creating the Second Injury Fund useless. Section 48-128 speaks of combined disabilities, and it places no limit on the type of disabilities which may be combined. Moreover, the Nebraska Supreme Court has repeatedly held that such injuries can be combined and has apportioned liability between the employer and the Second Injury Fund for separate and distinct injuries. See, e.g., *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981) (permanent partial disability to right thumb combined with prior loss of left arm); *Camp v. Blount Bros. Corp.*, 195 Neb. 459, 238 N.W.2d 634 (1976) (injury to left foot combined with prior injury to right foot); *Runyan v. State*, 179 Neb. 371, 138 N.W.2d 484 (1965) (injuries to fingers on both hands combined with prior injury to right foot). See, also, *Lozier Corp. v. State*, 1 Neb. App. 567, 501 N.W.2d 313 (1993) (injury to left arm combined with previous injury to right arm). We conclude that the Second Injury Fund's argument lacks merit. Therefore, the judgment of the Workers' Compensation Court is affirmed.

AFFIRMED.